This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Robert Eggert has appealed the judgment of the Summit County Common Pleas Court that adopted the decision of its magistrate. That adoption affirmed two separate decisions by the City of Hudson's Personnel Advisory and Appeals Board, which denied both of Eggert's grievances. This Court affirms.
 I.
Appellant Robert Eggert began working for the City of Hudson (Hudson) during 1988 as a meter reader. He was soon promoted to senior lineman, a Level 8 pay scale classification, in Hudson's electric department. His duties primarily consisted of electric line maintenance, both overhead and underground, and, from time to time, he was required to climb utility poles to work on overhead lines. Several years later, during May 1997, Eggert submitted a letter to the City Manager, requesting a voluntary transfer to the service department as an equipment operator, a Level 5 pay scale classification. As an equipment operator, he would not have to climb utility poles. His letter did not indicate that he was seeking a transfer as the result of any physical condition.
Eggert's supervisor also sent a letter to the City Manager, recommending Eggert's transfer. The supervisor explained that Eggert lacked "confidence in performing some of the duties" of a lineman for "physical reasons." The letter also stated that Eggert's previous supervisor had made allowances for Eggert, but that the operating procedures of the department no longer permitted Eggert to avoid overhead line work. The "physical reasons" were never detailed. The City Manager approved the reassignment. As the result of this move, Eggert was reclassified at Level 5, down from Level 8, and he received a cut in pay.
Thereafter, a senior electrical technician in the electric department (Senior Technician)[1] fell and suffered a serious head injury while on the job. Prior to his fall, this man's duties included electric system design, PCB transformer testing, EPA contacts, OSHA compliance, and purchasing and inventorying all the supplies and equipment for the electric department. As a direct result of his injury, Senior Technician was relieved of his purchasing and inventorying responsibilities and, instead, began reading meters twelve days a month. Purchasing and inventorying responsibilities and meter reading duties each fall into positions classified at Level 5. However, Senior Technician continued performing the balance of his previous duties, which were classified at a higher level. The City Manager reassigned another employee in the electric department, Jeff Fullerton, who had been reading meters, and gave him the responsibility of purchasing and inventory.
 A. First Grievance
On January 15, 1999, Eggert, along with several others, filed a grievance with Hudson's Public Works Director, claiming that (1) Senior Technician and Fullerton had essentially switched or traded job positions and classifications without either position being posted pursuant to Hudson's Personnel Rules and Regulations, (2) Senior Technician took a lower pay scale position without accepting the corresponding decrease in pay scale classification, while Fullerton was promoted to a higher pay scale position and classification without following established procedures for promotion and, (3) if Senior Technician was permitted to reduce his duties without a corresponding decrease in his job classification and pay, the grievants should all have their previous pay scale classifications reinstated. Thus, the issue presented was whether Hudson had violated its own regulations by assigning Fullerton to Senior Technician's supply and inventory duties, while allowing Senior Technician to assume meter reading responsibilities without suffering a decrease in pay grade. When the Public Works Director denied the grievance, they appealed to the City Manager.
The City Manager held a hearing and subsequently denied the grievance. In his decision, the City Manager stated (1) that the two employees did not switch or change job classifications, (2) that Senior Technician had become disabled and was performing different duties as a reasonable accommodation, (3) that Fullerton's pay classification had never changed, despite the change in his responsibilities, (4) that the grievants had been transferred from senior linemen to equipment operators at their own behest with a full understanding of the pay differential, and (5) because they had not grieved within ten days of their transfers, the grievance was untimely. This decision was appealed to the Personnel Advisory and Appeals Board (the PAAB).
The PAAB scheduled and conducted a hearing on the matter. At the PAAB hearing, Eggert claimed that Senior Technician should be considered a meter reader, which is a Level 5 classification, and receive a pay cut. He also warned that if the PAAB did not sustain his objection, it would likely receive a wave of claims asserting disabilities from employees hoping to do less work for more pay. He did not mention his own alleged condition. Lastly, Eggert stated that he did not grieve during 1997 because he believed everyone was being paid according to Hudson's Personnel Rules and Regulations.
Several employees of Hudson also appeared and spoke at the hearing. Those employees explained the details of how Senior Technician had been injured and why he had been transferred. They also explained Hudson's Personnel Rules and Regulations with regard to transfers. After the hearing concluded, the PAAB upheld the City Manager's decision and denied the grievance. The PAAB specifically determined that the grievants lacked standing to challenge the pay classification of either Senior Technician or Fullerton. In its ruling, the PAAB further stated that, while the grievants did have standing to challenge Fullerton's transfer, the City had acted properly under Section 254.25 of the Hudson Personnel Rules and Regulations and that transfers to a new position, like his, did not need to be posted. On June 24, 1999, Eggert filed an administrative appeal in the Summit County Common Pleas Court.
 B. Second Grievance
During late June 1999, Eggert submitted another grievance to the Public Works Director. In his second grievance, he stated that the rules regarding transfers should be applied uniformly and, because the PAAB had determined that Senior Technician was not required to have his pay reduced when his duties changed, Eggert should not have had his pay reduced when he transferred from the electric department to the service department. He sought a prospective wage increase and backpay. The primary issue raised in this grievance was, again, whether Senior Technician's duty reassignment as the result of his disability was fair to Eggert. However, as the grievance proceeded through the administrative appeals stages, the issue ultimately became whether Eggert was disabled when transferred and, if so, whether he was treated unfairly.
At the PAAB hearing on this grievance, Eggert argued that Hudson should either change the pay scale classification or modify the duties of Senior Technician. Eggert also asserted, for the first time, that at the time he bid for his 1997 transfer, he had severe tendonitis in his foot, causing his ankle to fail periodically. In essence, he suggested that he had a limiting physical condition as did Senior Technician and that he should not have suffered a down grade in pay classification. He claimed that his difficulty with climbing utility poles precipitated his transfer request during 1997. He stated that his supervisors told him he could transfer departments if he could not do the work. When asked why this issue had not been raised previously, Eggert retorted that it simply "[n]ever came up." He did not produce any medical evidence of this alleged tendonitis and stated that he had never had any rehabilitation for the condition. After the hearing concluded, the PAAB unanimously denied Eggert's grievance. It determined that Eggert had not proven that Senior Technician had been demoted without a decrease in pay scale classification and that Eggert had failed to demonstrate that he was disabled.
After having his second grievance denied at every administrative stage, Eggert filed another administrative appeal in the Summit County Common Pleas Court. The common pleas court then consolidated the two cases on December 27, 1999.
 C. Administrative Appeal
The common pleas court referred the matter to its magistrate. The magistrate determined that the record was completely devoid of any evidence that the PAAB's decision regarding Eggert's first grievance was arbitrary, capricious, unreasonable or not supported by a preponderance of the evidence. The magistrate further determined that the appeal with respect to his second grievance was unfounded and without support in law or fact, concluding that the PAAB's second decision was not arbitrary, capricious or unreasonable. Eggert filed objections. After overruling the objections, the common pleas court adopted the magistrate's decision and entered judgment accordingly. Eggert timely appealed to this Court, asserting one assignment of error.
 II. Assignment of Error The [common pleas] court erred by adopting the decision of the magistrate because the decision is arbitrary, capricious, unreasonable, and unsupported by a preponderance of substantial, reliable, and probative evidence and by stating that the appeal of [Eggert] is without proof or support in fact or law.
In his sole assignment of error, Eggert has challenged the common pleas court's adoption of the magistrate's decision, claiming that the record is teeming with evidence that Hudson improperly allowed Senior Technician to alter his work duties without a change in his pay classification. He has further argued that his supervisor's letter, which indicated Eggert "lacked confidence in performing some of [his] duties" for "physical reasons," mandates a finding that he transferred departments as the result of a disability.
When reviewing an administrative decision, a common pleas court is charged with the responsibility of determining whether "the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. The court engages in a hybrid form of review in that it must make both factual and legal determinations. Univ. of Cincinnati v.Conrad (1980), 63 Ohio St.2d 108, 111; Dudukovich v. Housing Authority
(1979), 58 Ohio St.2d 202, 207. Thus, to an extent, a substitution of judgment by the reviewing common pleas court is permissible. Conrad,63 Ohio St.2d at 111. However, the common pleas court is limited as it must give "due deference to the administrative resolution," see id, and may not "blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise." Dudukovich, 58 Ohio St.2d at 207. See, also, Gerstenberger v. Macedonia (1994), 97 Ohio App.3d 167, 172. Indeed, the key term in this analysis is "preponderance." Dudukovich,58 Ohio St.2d at 207. If a preponderance of reliable, probative and substantial evidence exists, the common pleas court must affirm; if such a preponderance does not exist, the court may reverse, vacate, modify or remand. Id.
This Court's standard of review is even more limited. When reviewing whether the court of common pleas correctly applied the aforementioned standard of review, the inquiry is limited to whether the common pleas court abused its discretion. Gerhart v. Div. of Indus. Compliance, OhioConstr. Industry Examining Bd. (2000), 137 Ohio App.3d 826, 829. Hence, in this case, the issue is whether the common pleas court abused its discretion by determining that the administrative agency's decision was supported by a preponderance of the reliable, probative and substantial evidence. To constitute an abuse of discretion, the common pleas court's action must have been arbitrary, unreasonable, or unconscionable. Id.
Applying the foregoing standard, this Court holds that the common pleas court did not abuse its discretion by concluding that each decision of the PAAB was supported by a preponderance of substantial, reliable, and probative evidence on the record as a whole. First, with regard to whether Senior Technician switched jobs and classifications with Fullerton, this Court concludes that the record is replete with evidence that such did not occur. In fact, the record clearly demonstrates that, as a direct result of his disability, Senior Technician now reads meters instead of conducting inventory and ordering supplies. These duties all fell within the same pay classification. The record also shows, however, that Senior Technician kept a majority of his responsibilities in a higher pay grade. The record further demonstrates that Fullerton remained in his Level 5 pay grade, simply taking on different Level 5 duties. Thus, Eggert's claim that Senior Technician and Fullerton switched jobs and classifications is unfounded, and the PAAB's decision to that end was proper.
As for Eggert's disability claim, the record supports its denial as well. Eggert never took any sick leave because of his tendonitis, nor did he seek to have his condition rehabilitated. His written transfer request is devoid of any reference to his physical abilities. The record contains no medical history or documentation. Other than his own testimony, there is no evidence that Eggert suffered from tendonitis and, as the magistrate noted in his decision, Eggert's credibility was central to the PAAB's action. After warning the PAAB at his first hearing about a possible wave of disability claims, Eggert returned and claimed to suffer from tendonitis. The PAAB's decision to reject Eggert's disability claim cannot be deemed unsupported by the record as a whole.
In the end, Eggert's arguments attacking the magistrate's decision are without merit. Clearly, there was a change in the duties of both Senior Technician and Fullerton, but that change was precipitated only by Hudson's desire to accommodate Senior Technician under the Americans with Disabilities Act. The record demonstrates that Fullerton was transferred, not promoted, to his current position. Lastly, Eggert failed to claim any disability until approximately three years after his transfer request and, even then, provided no documentary or medical proof of tendonitis. Therefore, the record as a whole supports the magistrate's decision, and this Court concludes that the common pleas court's adoption of that report was not arbitrary, unreasonable or unconscionable.
 III.
Eggert's assignment of error is overruled. The judgment of the common pleas court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ____________________________ BETH WHITMORE
BAIRD, P.J., CARR, J. CONCUR.
[1] Because this individual is disabled, Hudson declined to refer to him by name, as does this Court.